## FARRELL AND WIFE *v.* ENRIGHT.

At common law, an alien cannot acquire title to real estate by descent or other mere operation of law.

The seventeenth section of the first article of the Constitution of this State only removes the disability of alienage to such foreigners as are *bona fide* residents of the State ; it leaves the right of non-resident foreigners, in respect to real property, as it exists at common law.

On the sixteenth of April, 1850, E., a resident of this State, died seized of certain real estate in the City of San Francisco. At the time of his death he left surviving him a brother, resident in the State, and a sister residing in Canada. In 1853 the sister moved to and became a resident of this State : *Held*, That the sister, being an alien at the time of her brother's death, did not inherit any portion of his real property. The estate vested immediately upon the death of the intestate in the resident brother, and the subsequent removal of the sister to, and residence in the State, did not change the descent of the property.

APPEAL from the Twelfth District, County of San Francisco.

This was an action brought by the plaintiffs to establish the right of the plaintiff, Bridget Farrell, as heir to a portion of the estate of Thomas Enright, deceased, and to recover the rents and profits thereof. The facts appear in the opinion of the Court.

*Francis J. Lippitt* for Appellant.

I. Art. I, sec. 17 of the Constitution does not prohibit non-resident foreigners from inheriting property in this State.

1. There is a legal *prima facie* presumption in regard to any provision in the Constitution, that it is a limitation on the power of the Legislature, rather than a restriction upon individual rights ; *i. e.*, that it is a *constitutional*, rather than a legislative provision. The People *ex rel.* Finley *v.* Jewett, 6 Cal. R. 291.

2. When the Constitution was framed, all aliens could inherit property here, and the policy of the new State in respect to foreigners forbade any narrowing of their privileges. The People *ex rel.* the Attorney General *v.* The Executors of Folsom, 5 Cal. R. 373.

3. An affirmative statute takes away no prior privileges. The King *v.* Pugh, Doug. 188.

4. The Act of April 19th, 1856, declares that *all* aliens shall

inherit.   If section 17 prohibits non-resident aliens from inheriting, this Act is unconstitutional.

II.   Sec. 17 of Art. I of the Constitution enabled foreigners who were or should become *bona fide* residents, to transmit by descent to their natural heirs, whether residents or not ; at least, so that they might take on becoming residents themselves.

1.   The provision was intended to hold out an inducement to foreigners to settle in the State.

2.   If their property could never go by descent to their nearest heirs, unless these heirs were residents of the State at the time of their death, the inducement held out would be substantially either *illusory* or *inoperative*, according to the sense in which the provision should be understood.   Goodell v. Jackson, 20 J. R. 707, 708 ; Jackson v. Adams, 7 Wend. 369, 370.

III.   An interpretation of a law which would effectually carry out its intent, will be adopted in preference to one which would virtually defeat it, where this can be done without infringing any rule of legal construction.   Smith's Comm., secs. 491, 496, 497.

IV.   By force of the provision in Art. I, sec. 17 of the Constitution, under the rules of the common law, the appellant, Bridget Farrell, on becoming a *bona fide* resident of the State, was *ipso facto* naturalized *quoad* the rights of property, and thereby enabled to inherit to her brother retrospectively.

1.   The section must receive a common law interpretation.   Smith's Comm. Stat. Law, sec. 534.

2.   Naturalization may be either by constitutional or legislative enactment.   Whole classes may be so naturalized.   One may be naturalized *ipso facto*, by complying with a condition specified in a statute.   The statute 7 Anne, naturalized *all foreign protestants*, (though repealed some years afterwards).

3.   Whether a particular enactment confers naturalization must be determined by its language, construed in accordance with its known policy and intent.

4.   The words in sec. 17, which define the rights of resident foreigners as to property, are substantially the same as the operative words which effect naturalization at common law.   They therefore

confer naturalization *quoad* the rights of property. Priest *v.* Cummings, 20 Wend. 353, 354.

5. Naturalization is a *status known* to the common law, and having certain incidents belonging to it. Not one of these can be disannexed from it by a Court.

6. One of these incidents is the curing of past disabilities, thus enabling the alien to inherit as if born in a country; that is, retrospectively.

An alien cannot take by descent; he may take by devise or purchase, but he holds only at the pleasure of the crown, which may at any time divest him of an office found. 1 Cranch. 603 ; 7 Wend. 368 ; 3 Wheat. 588, 599.

Denization is by letters patent from the crown; it enables the alien not only to *take* by devise or purchase; but to *hold* what he may thus acquire, which before he could do only till office found. He may also now transmit by descent to his heirs. But denization takes effect only from the date of the patent ; therefore, property acquired before that date may be taken by the office found, for denization cures no past disabilities ; it has no relation back. 1 Bl. Comm. 374.

Naturalization is only by act of Parliament. 1 Bl. 374.

Naturalization takes effect from birth ; therein differing from denization. Vin. Abr. Alien D.

A naturalized subject inherits as if natural born. 1 Bac. Abr. 198, Alien (b.) ; 2 Bl. 249 ; 1 Bl. 374, note. 21.

Though the descent were cast before the naturalization, one may inherit, for the naturalization relates back to birth ; it is retrospective, curing all defects. 2 Bl. 249.

A naturalized alien inherits as if born in this country. Naturalization relates back to confirm the title of a purchaser acquired during alienage. Jackson v. Beach, 1 J. Cas. 401.

7. The retrospective effect of acts of naturalization is not produced by any special words, but is deduced by the common law from the operative words, which are the same in substance with those in sec. 17, Art. I, of the Constitution. Priest *v.* Cummings, 20 Wend. 353, 354.

8. It follows that the appellant, Bridget Farrell, on becoming a *bona fide* resident of the State, was *ipso facto* naturalized *quoad* the rights of property, and enabled to inherit to her brother.

V.   The decision in Siemssen *et al. v.* Bofer, 6 Cal. R. 250, will not control this case.

1. The plaintiffs in that case had never become residents of the State ; it therefore decided only that the Constitution prohibited property from descending to one who was still a non-resident alien.

2. The Court cannot adhere even to this decision without pronouncing the Act of April, 1856, unconstitutional.

3. So far as the language of the Court in that case may be construed as declaring that the Constitution intended to debar alien heirs from taking, even after becoming residents, it was not necessary to the decision of the case, and is therefore extrajudicial and not binding.

*Crockett & Crittenden* for Respondents.

The right of inheritance given by sec. 17, Art I, Constitution, to aliens, is restricted to such as " are or may hereafter become *bona fide* residents of this State."

The plaintiff, Bridget, was not a resident of this State when her brother died, but on the contrary, was an alien residing in a foreign country.   It is evident, therefore, that on the sixteenth of April, 1850, if she was otherwise incapable of inheriting, this clause of the Constitution did not relieve her from the disability, for the simple reason that she was not within its terms, not then being a resident of this State. If she never had removed to California, but had continued up to this present time to reside in Canada, will any one maintain that she could have inherited this estate, either at common law or by virtue of the above cited clause of the Constitution ?

The common law was adopted in this State on the 13th of April, 1850, three days before Thomas Enright died ; and we will not insult the intelligence of the Court by citing authorities to prove that under that system an alien cannot inherit.

We have already shown, that if she had continued to be a non-resident alien, the Constitution provision would not and could not by any possible construction, have embraced her case.   But she removed

into this State in October, 1853, about three and one half years after the death of the intestate ; and we propose to inquire what effect, if any, this produced upon her rights.

We think it manifest that it produced none whatever.    When the death occurred, the estate is *instanter* rested in the defendant, who was then a resident of this State, and was next of kin to the deceased ; or, if the defendant was not capable of inheriting the property escheated, the title rested in some one, or escheated to the State, and did not remain in abeyance and without an owner.    Having once vested and become perfect, it could not be divested and the course of the descent changed by the subsequent removal of the plaintiffs into this State.

The right to inherit depends upon the existing state of the allegiance at the time of descent cast.    3 Hill, 79.

" If the issue of a person dying intestate are aliens, they are not his heirs, and the estate goes to the next of kin who are citizens." Hardy *v.* DeLion, 5 Texas R. 211 ; 3 Hill, 79.

In analogy to this principle, it has been decided, that the naturalization of a *femme covert* does not retroact so as to entitle her to dower in lands acquired by her husband and conveyed by him before she was naturalized.    Priest *v.* Cumming, 16 Wend. 616 ; 20 *Ib.* 338.

Naturalization does not retrospectively confirm a title claimed by descent.    Vaux *v.* Nesbit, McCord R. 370.

In Kentucky, by a statute passed in 1800, it was provided that " any alien other than alien enemies, who shall have actually resided in this commonwealth two years, shall, during the continuance of his residence therein, after the said period, be enabled to hold, receive and pass any right, title or interest to any lands or other estate, in the same manner, and under the same regulations as the citizens of this State may lawfully do."    Under this statute it was held that an alien heir cannot take, unless he had resided in the State two years *prior* to the death of the intestate.    Trustees, &c. *v.* Gray, 1 Little's R. 149.

This case is strongly in point, and we think in fact is decisive of the case at bar.    A *subsequent* residence could not retroact, so as to bring the party within the statute.    It required a residence *prior* to

the death, so that *at the time of descent cast*, the party was capable of inheriting.

FIELD, J., delivered the opinion of the Court—TERRY, C. J., concurring.

The determination of the appeal in this case turns upon the construction of the seventeenth section of the first article of the Constitution, which provides that, " foreigners who are, or may hereafter become *bona fide* residents of this State, shall enjoy the same rights in respect to the possession, enjoyment and inheritance of property as native born citizens." The material facts, as admitted by the demurrer, are briefly these : On the sixteenth of April, 1850, Thomas Enright died at San José, intestate, being at the time seized of certain real estate situated in the City of San Francisco. The deceased was a resident of California at the time of his death, and had been for some years previously. He had surviving him a brother, the defendant, and a sister, Bridget, one of the plaintiffs. The brother was a resident of the State, but the sister and her husband, the plaintiffs in this action, were both aliens, residing in Canada. The deceased left surviving him neither wife, or descendant, or parent, and no brother but the defendant, and no sister but the plaintiff, Bridget. Letters of administration were taken out upon the estate of the deceased, and by proceedings had in the Probate Court, the real estate was sold and conveyed in June, 1851, to one Duncan, who, in July following, conveyed the same to the defendant. Of this real estate the property in controversy is a part, and ever since the death of the intestate the defendant has been in its possession and in the enjoyment of its rents and profits. The plaintiffs removed to and became residents of California in October, 1853, and brought the present action to establish the right of the sister to one undivided half of the property and of its rents, as co-heir with her resident brother. The Court gave judgment on the demurrer for the defendant, and the plaintiffs appealed. It is unnecessary to notice the proceedings in the Probate Court, alleged to be illegal, as from the construction we give to the provision of the Constitution, the plaintiff Bridget did not take any interest in the property as heir of the intestate.

At the time of her brother's death, the common law had been adopted, and by its settled doctrine she could not, being an alien, acquire title to real property by descent or other mere operation of law.     2 Kent, 54 ; Jackson *v.* Lunn, 3 John. Cas. 100.     There was then no statute changing this doctrine.     The clause of the Constitution cited only removes the disability of alienage to such foreigners as are *bona fide* residents ; it leaves the right of non-resident foreigners, in respect to real property, as it exists at the common law.     It does not apply to the plaintiff, Bridget, as she was not, at the time of the descent cast, within its terms.     Her subsequent removal to, and residence in the State, cannot avail her.     The estate vested immediately upon the death of the intestate in the resident brother, the defendant.     It did not remain in abeyance for the possible future residence in the State of alien relatives of the deceased.     It would be impossible to estimate the degree of confusion into which numerous titles would be thrown, if alien relatives of an intestate, years after descent cast, could successfully assert claims to the real property of the deceased by simply becoming residents of the country.     The language of the clause in the Constitution does not require a construction leading to this result, and it would be imputing little wisdom to its framers to ascribe to them any such intention in its adoption.     We think it is too clear for argument that the subsequent residence of the plaintiff, Bridget, did not retroact so as to confer upon her any right, under the seventeenth section of article one of the Constitution, to inherit any portion of the real estate of which her deceased brother died possessed.     See Orser *v.* Hoag, 3 Hill, 79 ; Priest *v.* Cummings, 10 Wend. 677, and 20 Wend. 338 ; Trustees of Louisville *v.* Grey, 1 Litt. 147.

Judgment affirmed.