[S. F. No. 6534. In Bank.—October 18, 1913.]

WESTERN PACIFIC RAILWAY COMPANY (a Corporation), Appellant, v. CARRIE E. GODFREY, MATHILDA SAMUELS, and ALICE V. SMITH, Respondents.

CORPORATION—STOCKHOLDER'S LIABILITY—LEGATEE ACCEPTING LEGACY OF STOCK—OWNERSHIP ATTACHES AT DEATH OF TESTATOR—LIABILITY FOR SUBSEQUENT CORPORATE DEBTS.—A legatee of shares of stock in a corporation who, upon distribution of the estate of the testator, does not renounce but accepts the legacy, must be deemed to have been the owner of the stock from the time of the death of the decedent, and is liable as such for his proportion of the corporate debts contracted after the death, but before distribution of the estate.

ID.—ESTATE OF DECEASED PERSON—TITLE TO PROPERTY VESTS AT DEATH.—The estate of a decedent vests in his heirs or devisees and legatees immediately upon his death. In case of testacy, the decree of distribution does not create the title. It merely declares the title that accrued under and by the will.

ID.—CONSTITUTIONAL PROVISION IMPOSING LIABILITY IS SELF-EXECUTING—LEGISLATURE CANNOT LIMIT LIABILITY—"STOCKHOLDER" AND "OWNER OF SHARES" SYNONYMOUS TERMS.—Section 3 of article XII of the present state constitution, declaring that "each stockholder of a corporation, . . . shall be individually and personally liable for such proportion of all its debts and liabilities contracted or incurred, during the time he was a stockholder, as the amount of stock or

shares owned by him bears to the whole of the subscribed capital stock or shares," is self-executing, and any attempt by the legislature to limit its effect would be beyond its constitutional power, and therefore void. The word "stockholder" as so used is synonymous with the term "owner of shares" as used in section 298 of the Civil Code.

ID.—SECTION 322 OF CIVIL CODE—LIABILITY NOT RESTRICTED.—Section 322 of the Civil Code does not show an intent on the part of the legislature to so restrict the meaning of the term "stockholder" as to exclude from liability any person who, being *sui juris,* voluntarily accepts ownership of stock in the corporation.

ID.—INSOLVENT BANKING CORPORATION—RECEIVERSHIP PROCEEDINGS— ENFORCEMENT OF STOCKHOLDER'S LIABILITY.—The pendency of receivership proceedings against an insolvent banking corporation does not affect the right of its creditors to proceed against its stockholders in the enforcement of their stockholder's liability.

ID.—DIVIDEND PAID BY RECEIVER—PRO TANTO DISCHARGE OF CORPORATE DEBT.—A dividend paid by the receiver of such insolvent corporation on the indebtedness due by it to one of its creditors, made subsequent to the commencement of an action by the creditor to enforce the stockholder's liability for such indebtedness, and prior to the trial, operated *pro tanto* as a discharge of the liability of the stockholders.

ID.—PART PAYMENT BY INSOLVENT CORPORATION IS PARTIAL SATISFACTION OF DEBT.—The liability of a stockholder under the constitutional provision is only for his proportion of such part of a corporate debt or liability as remains unpaid, and the fact of the insolvency of the debtor corporation does not prevent a payment by it of a portion of such debt or liability from operating as a partial satisfaction thereof.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Thomas F. Graham, Judge.

The facts are stated in the opinion of the court.

Frohman & Jacobs, Warren Olney, Jr., and Alexander R. Baldwin, for Appellant.

Cushing & Cushing, and Wm. S. McKnight, *Amici Curiae,* also for Appellant.

Page, McCutchen & Knight, Charles W. Slack, James M. Allen, and John F. Cassell, for Respondents.

ANGELLOTTI, J.—This appeal was originally heard and determined in the district court of appeal of the first district, the judgment of the lower court in favor of defendants being reversed with direction for the entry of judgment in favor of the plaintiff.   On application of the defendants an order was made herein, vacating the decision of the district court of appeal, and transferring the appeal to this court for hearing and determination.

The opinion of the district court of appeal, written by Mr. Justice Hall, was in part as follows:

"This is an appeal from a judgment entered against plaintiff.   The action was brought to obtain several judgments against defendants as stockholders in the California Safe Deposit & Trust Company, a corporation, for their proportions of the indebtedness of that corporation to the plaintiff.

"The case was tried and submitted to the court upon an agreed statement of facts.   The essential facts upon which depends the liability of the several defendants are the same. The sequence of events is the same in each case: the names, dates and amounts only being different.   The facts relating to the claim against Carrie E. Godfrey may be taken as typical of all the claims.

"William B. Godfrey died January 20, 1907, and by his will bequeathed to Carrie E. Godfrey all his estate, including 120 shares of stock in the California Safe Deposit & Trust Company, of which he was the owner at the time of his death. In February, 1907, his will was admitted to probate, and the executors appointed and duly qualified, and took possession of all his estate, including said shares of stock.

"In October, 1907, the plaintiff deposited with the California Safe Deposit & Trust Company the sum of $250,000, which has not been repaid.   On October 30, 1907, said Trust Company failed, and in January, 1908, it was duly adjudged to be insolvent, and a receiver appointed, in an action brought by the attorney-general.   The said action and the proceedings thereon are still pending.

"On March 2, 1908, the final decree of distribution in the estate of William B. Godfrey was duly made, and his entire estate was distributed to Carrie E. Godfrey, who received and accepted all of it, including the said shares of stock in said California Safe Deposit & Trust Company.   The executors

were thereupon discharged.    This action was commenced October 28, 1908.

"It is thus apparent that the principal and vital question to be answered upon this appeal may be thus stated: Is the legatee of shares of stock in a corporation who, upon distribution of the estate, accepts such legacy, answerable to the creditors of the corporation upon a stockholder's liability for corporate debts contracted after the death of the decedent, but before distribution of the estate?

"We think that this question must be answered in the affirmative.    If the legatee, under such circumstances, was a stockholder at the time of the contracting of the debt, such liability is imposed both by the constitution and the statute.    (Const. Cal., art. XII, sec. 3; Civ. Code, sec. 322.)

"That the estate of a decedent vests in his heirs or devisees and legatees immediately upon his death cannot be disputed. (Civ. Code, secs. 1341, 1384; *Beckett* v. *Selover,* 7 Cal. 215, [68 Am. Dec. 237]; *Farrell* v. *Enright,* 12 Cal. 450; *Estate of Woodworth,* 31 Cal. 595; *Brenham* v. *Story,* 39 Cal. 179; *Estate of Packer,* 125 Cal. 396, [73 Am. St. Rep. 58, 58 Pac. 59]; *Colton* v. *Onderdonk,* 69 Cal. 155, [58 Am. Rep. 556, 10 Pac. 395]; *Estate of Hite,* 159 Cal. 392, [Ann. Cas. 1912C, 1014, 32 L. R. A. (N. S.) 1167, 113 Pac. 1072].)    Many other cases to the same effect might be cited.

"Pending the administration the personal representatives of the decedent are entitled to the possession of the estate for the purposes of administration, but the title vests in the heirs or devisees and legatees, subject only to the right of possession of the personal representatives of the decedent.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"The legatee does not derive title from the decree of distribution but from the will, which takes effect immediately upon the death of the testator.    The decree of distribution does not create the title.    It merely declares the title that accrued under and by the will.    (*Chever* v. *Ching Hong Poy,* 82 Cal. 68, [22 Pac. 1081]; *Martinovich* v. *Marsicano,* 137 Cal. 354, [70 Pac. 459]; *Cooley* v. *Miller & Lux,* 156 Cal. 510, [105 Pac. 981].)

"Under the authorities above cited we see no escape from the conclusion that a legatee who does not renounce a legacy of shares of stock in a corporation, but upon distribution re-

ceives and accepts the same, must be held to have been the owner of said stock from the time of the death of the decedent, and in consequence liable as such for his proportion of the corporate debts contracted after the death of the decedent.

"This court decided nothing to the contrary of the views above expressed in *Miller & Lux* v. *Katz,* 10 Cal. App. 576, [102 Pac. 946]. It was there held that the executor could be sued, without joining the heirs or legatees, as representing the entire interest of the estate. Of course, until distribution it cannot be certainly known that any shares of stock would ever be distributed in kind to the heirs or legatees. The fact that such a suit may be maintained against the executor before distribution does not prevent a suit against the legatee after distribution."

Upon further consideration we are satisfied that the views thus expressed are correct, and we adopt the portions of the district court of appeal opinion that we have quoted as a part of this opinion.

It is not disputed that section 3 of article XII of our present constitution, creating stockholders' liability, is self-executing, and clearly it is. It in terms declares that "each *stockholder* of a corporation . . . shall be individually and personally liable for such proportion of all its debts and liabilities contracted or incurred, during the time he was a stockholder, as the amount of stock or shares owned by him bears to the whole of the subscribed capital stock or shares. . . ." At the time of the adoption of this provision, section 298 of the Civil Code provided, as it had ever since its enactment in 1872, that "the owners of shares in a corporation which has a capital stock are called stockholders." This is the common-sense meaning of the term "stockholder." To the mind of the layman the term "owner" when used with reference to corporation stock and the word "stockholder" are synonymous. So the constitutional provision is perfectly plain and unambiguous, leaving no room for any ascertainment by the legislature as to its meaning. This self-executing provision speaks for itself clearly and unequivocally, and any attempt by the legislature to limit its effect would be beyond its constitutional power, and therefore void. In view of the well settled meaning of the term "stockholder," the constitutional provision creates the liability therein defined on the

part of every owner of corporate stock for his proportion of
all debts and liabilities incurred during the time he is such
owner.   And the only material question remaining is whether
such legatee of corporation stock as has been described, viz.,
one who has accepted such stock on distribution and has thus
come into the full beneficial enjoyment thereof, was the owner
thereof from the date of death of his testator.   That he must
be held to have been the owner from such date, in view of the
well settled law of this state, is so clearly shown in the quota-
tions from the district court of appeal opinion, that nothing
need be added in that regard.   We are not concerned here
with questions that would be presented under different cir-
cumstances, such as, for instance, if the executor or adminis-
trator was compelled to sell the stock or some part thereof
to pay debts or expenses of administration, and the legatee
therefore never came into the beneficial enjoyment of the .
stock so sold, or, if the legatee renounced all claim to the
stock and refused to accept the same.   It may be true that
some interesting and perplexing problems as to where the lia-
bility rested would be presented if the circumstances were
different from those here presented.   We have here however
the simple case of a legatee who does not renounce, but who
received and accepted the stock given by the will, and as to
such a legatee we cannot escape the conclusion that the lega-
tee's ownership of the stock received and accepted must be
held to have existed from the death of the testator, so as to
burden such legatee with a stockholder's liability from such
date.

   We have suggested that the legislature is without any power
to limit the effect of the clear and unequivocal provision which
creates the liability.   In so far as this case is concerned it is
therefore unnecessary to consider section 322 of the Civil
Code, which is much relied on by learned counsel for defend-
ants as precluding any recovery.   However, we are of the
opinion that the section referred to is not fairly open to the
construction claimed for it by defendants.   A careful con-
sideration of the section affords no basis for a conclusion that
it was the design of the legislature to so restrict the meaning
of the term ''stockholder'' as to exclude from liability any
person who voluntarily accepts ownership thereof and is *sui
juris,* but the idea appears to have been to *enlarge* the term

so as to make it include persons who might not otherwise be held to be included therein. The portion thereof specially relied upon by defendants is as follows: "Stock held as collateral security, or by a trustee, or in any other representative capacity, does not make the holder thereof a stockholder within the meaning of this section, except in the cases above mentioned, so as to charge him with any proportion of the debts or liabilities of the corporation; but the pledgor, or person or estate represented, is to be deemed the stockholder, as respects such liability." Taken in connection with the remainder of the section, we read this as simply showing the intention of the legislature to make it clear that, notwithstanding the very broad language in the preceding portion of the section, it was not intended to make one who simply holds stock as collateral security, or as a trustee or in any other representative capacity, personally liable as a stockholder, except as otherwise expressly specified.

The district court of appeal also correctly said that the pendency of the receivership proceedings did not affect the right of plaintiff to proceed against a stockholder of the insolvent corporation, citing *Young* v. *Rosenbaum,* 39 Cal. 646.

It appears that subsequent to the commencement of this action and prior to trial, a dividend was duly declared and paid to creditors by the receiver of said California Safe Deposit & Trust Company, to the extent of ten per centum of their claims, and that plaintiff thus received from the California Safe Deposit & Trust Company, through such receiver, ten per cent of the amount of the indebtedness on account of which this action was brought, said ten per cent being $18,571.22. These matters were set up by supplemental answer. It seems to us very clear that, notwithstanding the insolvency of the corporation debtor, this payment should be held to have operated *pro tanto* as a discharge of the liability of the stockholders. It was, in fact, a payment to plaintiff by the insolvent debtor of a portion of the debt on account of which this action was brought, a satisfaction in part of that debt. The liability of the stockholder under our constitutional provision is only for his proportion of such part of a debt or liability as remains unpaid (see *San Jose Sav. Bank* v. *Pharis,* 58 Cal. 380; *Young* v. *Rosenbaum,* 39 Cal. 646), and we are unable to see how the fact of insolvency of the debtor

in any way affects the question. The case of *Sacramento Bank* v. *Pacific Bank,* 124 Cal. 147, [71 Am. St. Rep. 36, 45 L. R. A. 863, 56 Pac. 787], relied on by plaintiff, did not involve or determine any such question. The question there was as to the right of the creditor in the matter of a dividend declared by an insolvent bank in process of liquidation, and it was held that its right in that regard was in no way affected by the fact that it had recovered a portion of its claim from stockholders, so long as it was not paid in the aggregate more than the amount of the allowed claim. This was a very different question from the one here presented. It is worthy of note that the opinion in that case shows that the recovery from the stockholders was only the stockholders' proportion of the amount remaining due the plaintiff creditor after it had received five prior dividends from the insolvent corporation, amounting to a quarter of its original claim.

It should be noted that according to the allegations of the complaint, that of the two hundred and fifty thousand dollars deposited by plaintiff with the California Safe Deposit & Trust Company, only $185,712.22 was "either paid to third persons by the said bank or commingled with the other assets and property prior to its suspension of payment," and recovery was sought from defendant stockholders upon the basis of a claim for $185,712.22 only. This amount should be still further reduced by the deduction of the ten per cent dividend since paid to plaintiff by the bank, viz., $18,571.22.

The judgment is reversed and the cause remanded with directions to the court below to enter judgment for plaintiff upon the pleadings and the agreed statement of facts in accordance with the views herein expressed.

Shaw, J., Sloss, J., Lorigan, J., Melvin, J., and Henshaw, J., concurred.

Rehearing denied.

Beatty, C. J., dissented from the order denying a rehearing.