COUNTY NATIONAL BANK AND TRUST COMPANY OF SANTA BARBARA, EXECUTOR OF THE LAST WILL AND TESTAMENT OF RALPH ISHAM, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89211. Promulgated February 9, 1939.

*Paul B. Cromelin, Esq., Bolitha J. Laws, Esq.,* and *John W. Townsend, Esq.,* for the petitioner.

*John H. Pigg, Esq.,* for the respondent.

### OPINION.

SMITH: This proceeding is for the redetermination of a deficiency of $12,038.48 in the income tax of Ralph Isham, deceased, for 1933. The parties have filed a written stipulation of facts, with all the material documents attached, which we adopt as our findings of fact. The stipulated facts may be summarized as follows:

Ralph Isham, deceased, was the father and sole devisee and legatee of Albert Keep Isham, who died a resident of Santa Barbara, California, on November 8, 1931. The petition in this proceeding was filed by Ralph Isham prior to his death, which occurred on August 25, 1937, and his executor, the County National Bank & Trust Co. of Santa Barbara, has been duly substituted as the party petitioner in this proceeding.

In his will Albert Keep Isham, hereinafter referred to as the son, devised and bequeathed to his father all of his property, both real and personal. The son's will was admitted to probate on December 7, 1931, in the Superior Court of the State of California, in and for the County of Santa Barbara. The County National Bank & Trust Co. of Santa Barbara became the administrator, c. t. a., of the son's estate. The son's will provided in part as follows:

It is my will, and I direct that all inheritance taxes, whether imposed by the United States Government, or by the government of any state in which I may have property at the time of my death, on all of the property devised or bequeathed to my father, Ralph Isham, in and by PARAGRAPH SECOND of this my will, and also on the life interest given to my said father in and by PARAGRAPH THIRD of this my will, and also on the remainder after said life interest, in the property therein devised and bequeathed to said The Northern Trust Company, as trustee, shall be paid by my executor out of the principal of the property bequeathed and devised by said PARAGRAPH THIRD, and that the same, when so paid, shall not in any manner or to any extent whatsoever be charged against

my said father, Ralph Isham, or deducted from the property devised and bequeathed to him in and by said PARAGRAPH FIRST hereof, or be charged against or deducted from his life interest in the property devised and bequeathed by said PARAGRAPH THIRD hereof.

In case, however, I leave no property on which the provisions of PARAGRAPH THIRD hereof can operate, all said inheritance taxes on the property devised and bequeathed by PARAGRAPH SECOND hereof shall be chargeable against my said father, and payable out of said last mentioned property.

PARAGRAPH SECOND: I give, devise, and bequeath to my father, Ralph Isham, of said City of Chicago, his heirs, executors, administrators and assigns, as his own absolute property, all the property, real, personal and mixed, of any and every kind and description whatsoever and wheresoever situate, of which I may die possessed, or in or to which I may have any right, title or interest at the time of my death, or over which I may then have any power of disposition, including all such income of the property held in trust under the provisions of the last will and testament of my grandfather, Albert Keep, as I may be entitled at the time of my death to have paid over to me by the trustees thereunder, but excluding all of the principal of said trust property, which said principal is hereinafter disposed of in and by PARAGRAPH THIRD hereof.

Paragraph third of the will referred to above dealt with certain trust property in which the father, Ralph Isham, was bequeathed a life interest. However, at the time of the son's death the trust had terminated so that this provision of the will is not material. All of the son's property passed to the father under the above quoted paragraph second of the will.

On or before June 4, 1932, all claims against the son's estate had been paid except a claim filed on March 15, 1932, by one Richard H. Travers in the amount of $250,000 for services allegedly rendered as financial advisor to the son during his lifetime. This claim was rejected on March 17, 1932, and a suit thereon was subsequently brought by Travers, which was settled on October 5, 1933, by a compromise payment to Travers of $15,000.

Included in the assets of the son's estate were 500 shares of stock of the Guarantee Trust Co. of Chicago, Illinois, which had a fair market value on November 8, 1931, the date of the son's death, of $182,250. The administrator of the son's estate on November 23, 1933, filed a petition with the court for permission to sell the said 500 shares of stock, which permission was granted by order of the court entered November 27, 1933. The shares were sold on November 27, 1933, for $107,680.

On November 24, 1933, the administrator filed a "final account and report and petition for final distribution" and on December 4, 1933, the court entered its "decree of settlement of accounts and of final distribution." Among the assets listed for distribution in the final account were cash on hand in the amount of $137,651.61, a large amount of miscellaneous stocks and bonds, and several parcels of California real estate.

During the year 1933 and prior to the filing of the final account on November 24, 1933, income was derived from the properties comprising the son's estate in the amounts of $949.69 interest and $83,840 dividends. All of such income was paid to and received by the administrator and is reflected in the cash on hand or other assets listed in the administrator's final account. All of the assets of the estate so listed were distributed to and received by the father, Ralph Isham, during the year 1933 except cash in the amount of $24,578.38 which was allowed and ordered paid to certain other persons.

During the year 1933 and prior to the final distribution of the son's estate the administrator paid out of funds of the estate the aggregate amount of $8,049.61, consisting of the following items:

| | | |
|---|---|---:|
| (a) Interest | | $2.11 |
| (b) Taxes: | | |
| (1) Los Angeles County real estate | $311.34 | |
| (2) Santa Barbara County real estate | 2,435.59 | |
| (3) California solvent credits | 1,839.56 | |
| (4) Federal check | 2.86 | |
| (5) California inheritance | 2,060.68 | |
| (6) Additional Federal estate | 120.20 | |
| (7) Federal excise on dividends | 1,277.27 | |
| | | 8,047.50 |
| Total | | 8,049.61 |

The respondent now concedes that all of the above items not allowed as deductions in the determination of the deficiency herein are allowable except the California inheritance tax of $2,060.68 and the additional Federal estate tax of $120.20.

A fiduciary return of income (form 1041) was filed by the administrator of the son's estate for the year 1933, showing gross income of $84,789.69, including interest of $949.69 and dividends on stock of domestic corporations of $83,840. The only deductions claimed on the return were interest paid, $2.11 and taxes paid, $8,047.50, leaving a net income of $76,740.08. The amount of $2,170.08 was shown in the return as the beneficiary's (father's) share of distributable income. This amount is the difference between the dividends of $83,840 and the sum of $7,099.92, representing the interest and taxes paid less the interest received, reported as an ordinary net loss, and $74,570, representing the capital loss on the sale of the above mentioned 500 shares of stock of the Guarantee Trust Co. of Chicago.

The administrator of the son's estate also filed an income tax return on behalf of the son's estate for 1933, on form 1040, which showed no net income. The father filed an individual income tax return (form 1040) for the year 1933 in which he reported a gross

income of $94,244.57, including the dividends received by the son's estate in the above stated amount of $83,840. He also reported a capital net loss of $124,154.57, including the aforesaid amount of $74,570 representing the loss on the sale of the 500 shares of Guarantee Trust Co. of Chicago stock.

In his determination of the deficiency herein the respondent has disallowed the capital net loss deduction of $74,570 claimed by the father, which is the principal item in controversy in this proceeding.

Also, in computing the father's distributable income from the son's estate, the respondent disallowed $6,772.34 of the aggregate amount of $8,049.61 of interest and taxes paid by the administrator as set forth above. The only part of the amount allowed was an item of $1,277.27 representing Federal excise tax on dividends. The respondent now concedes, however, and it is stipulated, that all of such items except the California inheritance tax in the amount of $2,060.68 and the additional Federal estate tax of $120.20 are deductible from the gross income of the son's estate and that the father's net income as shown in the deficiency notice is overstated accordingly.

The items of income and deductions and the respective contentions of the parties are summarized in the following table:

|  | Petitioner's contention | Respondent's contention |
|---|---|---|
| Income: | | |
| Interest | $946.69 | $946.69 |
| Dividends | 83,840.00 | 83,840.00 |
| Total income | 84,789.69 | 84,789.69 |
| Deductions: | | |
| Interest paid | 2.11 | *2.11 |
| Taxes: | | |
| (1) Los Angeles County | 311.34 | *311.34 |
| (2) Santa Barbara County | 2,435.59 | *2,435.59 |
| (3) California solvent credits | 1,839.56 | *1,839.56 |
| (4) Federal check | 2.86 | *2.86 |
| (5) California inheritance | 2,060.68 | |
| (6) Additional Federal estate | 120.20 | |
| (7) Federal excise on dividends | 1,277.27 | 1,277.27 |
| Loss on sale of stock | 74,570.00 | |
| Total deductions | 82,619.61 | 5,868.53 |
| Net income | 2,170.08 | 78,921.16 |

*Note.—In paragraph 14 of the stipulation the respondent concedes these items should have been allowed as deductions. In the 90-day deficiency notice only the item of $1,277.27 was allowed.

The allegations of error as set forth in the petition are that:

(a) The Commissioner erred in including in petitioner's 1933 gross income any sum in excess of $2,170.08 as representing petitioner's interest in the income from the property comprising the Estate of Albert Keep Isham, Deceased.

(b) The Commissioner erred, in the alternative, in including in petitioner's 1933 gross income any sum in excess of $76,740.08 as petitioner's interest in the income from the property comprising the Estate of Albert Keep Isham, Deceased.

(c) The Commissioner erred, in any event, in failing to allow petitioner a deduction from gross income in the amount of $74,570 as a capital loss sustained by him in 1933 upon the sale of shares of stock of the Guarantee Trust Company of which petitioner was the legal and beneficial owner.

(d) The Commissioner erred in failing to determine and to hold that petitioner has overpaid his 1933 income taxes in the amount of $335.84.

As to the first issue the petitioner contends that in computing the father's share of the income of the son's estate during the period of administration allowance must be made for the $74,570 capital loss resulting from the sale by the administrator of the 500 shares of stock of the Guarantee Trust Co. of Chicago, Illinois. Petitioner further contends that if the capital loss in question is not allowable to the son's estate in computing the father's distributable income, then it is allowable as a deduction to the father in his individual income tax return.

Sections 161 and 162 of the Revenue Act of 1932 provide in material part as follows:

SEC. 161. IMPOSITION OF TAX.

(a) APPLICATION OF TAX.—The taxes imposed by this title upon individuals shall apply to the income of estates or of any kind of property held in trust, including—

\* \* \* \* \* \* \*

(3) Income received by estates of deceased persons during the period of administration or settlement of the estate; \* \* \*

\* \* \* \* \* \* \*

(b) COMPUTATION AND PAYMENT.—The tax shall be computed upon the net income of the estate or trust, and shall be paid by the fiduciary, except as provided in section 166 (relating to revocable trusts) and section 167 (relating to income for benefit of the grantor). For return made by beneficiary, see section 142.

SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

\* \* \* \* \* \* \*

(c) In the case of income received by estates of deceased persons during the period of administration or settlement of the estate, and in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary.

Article 863 of Regulations 77 provides in part that:

*Decedent's estate during administration.*—The "period of administration or settlement of the estate" is the period required by the executor or administrator to perform the ordinary duties pertaining to administration, in particular the collection of assets and the payment of debts and legacies. It is the time actually required for this purpose, whether longer or shorter than the period specified in the local statute for the settlement of estates. * * * Where, however, the executor sells property of the estate for more than its value at the death of the decedent, the excess is income, or may be capital gain, taxable to the estate. * * *

An estate in process of administration must be treated as a tax entity separate and distinct from the heirs, devisees, and beneficiaries. *Merchants' Loan & Trust Co.* v. *Smietanka,* 255 U. S. 509; *Baltzell* v. *Casey,* 1 Fed. (2d) 29; affd., *Baltzell* v. *Mitchell,* 3 Fed. (2d) 428; certiorari denied, 268 U. S. 690. The petitioner does not contend otherwise in this proceeding. The income of a trust estate is to be determined and taxed as in the case of an individual taxpayer except that the amounts of income properly paid or credited to the beneficiaries are allowable as additional deductions. The sale of the shares of stock here in question admittedly was made by the administrator of the son's estate. Undoubtedly the resulting loss of $74,570 was a loss of the estate, the benefit of which it might have claimed in its income tax return in accordance with the statute. *Baltzell* v. *Mitchell, supra.* However, the estate as a tax entity is not before us and we are not called upon to make any determination of its tax liability. The taxpayer before us is the beneficiary of the son's estate and we are concerned with the income of the son's estate only as to the amount of such income as is taxable to the beneficiary during the taxable year. The plain wording of the statute is that the beneficiary is taxable on all of the income of the estate "properly paid or credited" to him during the taxable year. It is stipulated that the distributions which the father received from the estate during the taxable year 1933 included interest of $949.69 and dividends of $83,840. There is no questiton but that these amounts were "income" to the estate and after they were "properly" paid to the father they are deductible by the estate and taxable to him.

The provisions of the will and the laws of the state having jurisdiction over the administration determine what income of the trust estate is properly to be paid to the beneficiaries. *Anderson* v. *Wilson,* 289 U. S. 20; *Merchants' Loan & Trust Co.* v. *Smietanka, supra.*

The will of the son here contains no provision for the payment by the executor or administrator of any income of the estate to the beneficiary, except as to the trust fund which never became opera-

tive. It has been held, however, that the income of the estate of a decedent distributed to a residuary legatee during the period of administration of the estate is taxable to the legatee, although the will contains no specific provision for such payment of income. *Riker* v. *Commissioner*, 42 Fed. (2d) 150; *Little* v. *White*, 47 Fed. (2d) 512. No contention is made by the petitioner that the distributions made to the father during the taxable year were not in accordance with the laws of the State of California.

In *Ardenghi* v. *Helvering*, 100 Fed. (2d) 406, the Circuit Court of Appeals for the Second Circuit held, affirming 37 B. T. A. 345, that the beneficiary of a trust estate was not entitled to deduct in her individual income tax return the excess of the amount paid out by the trust estate for estate and succession taxes over the income of the estate. For the taxable years there involved the income of the estate was about $67,000, the estate and succession taxes paid by the executors amounted to about $245,000, and $75,000 was distributed to the beneficiary. In its opinion the court said:

* * * On the other hand in *Baltzell* v. *Mitchell*, 3 Fed. (2) 428, (C. C. A. 1) [1 USTC ¶ 110], and *Abell* v. *Tait*, 30 Fed. (2) 54 (C. C. A. 4) [1 USTC ¶ 355], the beneficiary was not allowed to deduct principal losses, "realized" by the executor during the period of settlement, on the theory that they should be marshalled against income. Although it was not given as the reason, we believe that the justification for these decisions was that under the local law such losses were capital losses as between the legatee and the estate, and properly allocated against principal. Certainly it is no answer to say that if losses were allowed, gains must be surcharged to the legatee's income. Capital gains would not be "properly paid" to the legatee during "administration or settlement of the estate". The suggestion that the payments might be regarded as "negative income" is a strange fantasy that we need not stop to consider.

The petitioner submits in its brief that:

4. *Where the beneficiary is the owner of a future estate in remainder, or there is but a dry trust, he is entitled to have losses incurred in connection with the sale of the corpus of the trust or estate deducted in determining his taxable share of trust income.*

In *Baltzell* v. *Casey*, *supra*, it was held that the life beneficiary of a trust estate is taxable on the income received therefrom without deductions of the capital losses of the estate. The taxpayer there was one of the remaindermen and had a vested interest in the corpus of the trust fund. It was held in *T. Rosslyn Beatty*, 28 B. T. A. 1286, that the beneficiaries of a trust, who were also the remaindermen, were not entitled to deduct the capital losses of the trust, which amounted to more than half of the trust income distributed to them and on which they were held taxable. These cases dealt with trusts and not estates in process of administration, as is here involved, but

we do not think that any distinction can be made on that ground. The statute itself makes no distinction. It provides that:

The taxes imposed by this title upon individuals shall apply to the income of estates or of any kind of property held in trust, including—

\* \* \* \* \* \* \*

(3) Income received by estates of deceased persons during the period of administration or settlement of the estate; \* \* \*

The son's estate here was in a true sense a taxpayer within the intendment of the statute and was not merely a "dry trust" or conduit through which the father received his distributions of income, as petitioner contends. The fact that the father was the sole beneficiary of the estate and, as well, the sole heir and devisee under the son's will does not change the taxable status or the statutory rights of either the estate or of the beneficiary.

Petitioner further contends that at the time of the sale of the shares of stock in question legal title to such shares was vested in the father, either by reason of the laws of the State of California or by reason of the fact that the period of administration of the son's estate had expired. Reference is made to section 300 of the California Probate Code which provides as follows:

*Title to decedent's estate. Possession.* When a person dies, the title to his property, real and personal, passes to the person to whom it is devised or bequeathed by his last will, or, in the absence of such disposition, to the persons who succeed to his estate as provided in division II of this code; but all of his property shall be subject to the possession of the executor or administrator and to the control of the superior court for the purposes of administration, sale or other disposition under the provisions of division III of this code, and shall be chargeable with the expenses of administering his estate, and the payment of his debts and the allowance to the family, except as otherwise provided in this code.

Petitioner cites *Western Pacific Railway Co.* v. *Godfrey*, 166 Cal. 346 (1913); 136 Pac. 284, in which the court stated, upon authority of a number of cited cases, that the estate of a decedent vests in his heirs or devisees and legatees immediately upon his death.

Granted that this is the law of the State of California, it does not follow that the estate may not be treated as a separate tax entity for Federal income tax purposes and required to pay an income tax on the gain realized from the son's property during the period of administration. Certainly the framers of the law did not intend for the tax on the income of estates of deceased persons during the period of administration to apply to estates in process of administration in one state, where title to decedent's property vests in the heirs or legatees upon decedent's death, and not in another state where it remains in the executors or administrators until it is distributed or the estate closed. We do not regard this question as one that can be determined by reference to state statutes or the rule of property prevailing in the

jurisdiction where a decedent's estate is being administered. Cf. *Freuler* v. *Helvering*, 291 U. S. 35. The laws of the State of California would, of course, govern in determining what income of the estate was distributable to the beneficiary. *Freuler* v. *Helvering*, *supra*. But, as stated above, no contention is made that the distributions in question here were not made in accordance with the laws of that state.

The shares of Guarantee Trust Co. of Chicago, Illinois, stock which the administrator sold, with the resultant loss, were not distributed in kind to the father prior to the sale. The stipulated facts are that the shares were sold by the administrator on November 27, 1933, pursuant to the order of the court having jurisdiction over the administration. The final account and report of the administrator was filed on November 24, 1933, but the court's decree of settlement of accounts and final distribution was not entered until December 4, 1933. The fact that the sale was made "after settlement of debts and claims against the estate" does not support petitioner's contention that the sale was legally a sale by the father of his own property and the loss thereon allowable to the father individually.

The remaining issue is whether in computing the father's taxable income from the estate allowance should be made for California inheritance tax amounting to $2,060.68 and the additional Federal estate tax amounting to $120.20 paid by the administrator during the taxable year.

As suggested by the petitioner in its brief, this issue involves the same provisions of the statute and the same questions of law as the foregoing issue and does not call for any extended discussion. It might be well to point out, however, that there is a provision in the son's will, as quoted above:

\* \* \* that all inheritance taxes, whether imposed by the United States Government, or by the government of any state in which I may have property at the time of my death, on all of the property devised or bequeathed to my father, Ralph Isham, in and by PARAGRAPH SECOND of this my will, and also on the life interest given to my said father in and by PARAGRAPH THIRD of this my will, and also on the remainder after said life interest, in the property therein devised and bequeathed to said The Northern Trust Company, as trustee, shall be paid by my executor out of the principal of the property bequeathed and devised by said PARAGRAPH THIRD, and that the same, when so paid, shall not in any manner or to any extent whatsoever be charged against my said father, Ralph Isham, or deducted from the property devised and bequeathed to him in and by said PARAGRAPH FIRST hereof, or be charged against or deducted from his life interest in the property devised and bequeathed by said PARAGRAPH THIRD hereof.

In case, however, I leave no property on which the provisions of PARAGRAPH THIRD hereof can operate, all said inheritance taxes on the property devised and bequeathed by PARAGRAPH SECOND hereof shall be chargeable against my said father, and payable out of said last mentioned property.

Under the statute, section 23 (c) of the Revenue Act of 1932, the taxes in question are permitted as a deduction only to the estate. This provision is in part as follows:

SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(c) TAXES GENERALLY.—Taxes paid or accrued within the taxable year, \* \* \*

\* \* \* \* \* \* \*

For the purpose of this subsection, estate, inheritance, legacy, and succession taxes accrue on the due date thereof, except as otherwise provided by the law of the jurisdiction imposing such taxes, and shall be allowed as a deduction only to the estate.

See *Keith* v. *Johnson*, 271 U. S. 1. To allow the beneficiary to offset the taxes against the income received from the estate would be to allow a deduction indirectly which the statute forbids directly. See *Anna F. Ardenghi*, 37 B. T. A. 345. We said in that case:

\* \* \* we think the question of whether or not a beneficiary is subject to tax must depend upon whether or not the beneficiary has received a distribution during the taxable year from the income of the estate or trust. If the estate had income and distributed a part of that income to the beneficiary, it is taxable to the beneficiary, regardless of the not inconsistent fact that inheritance taxes in an amount in excess of the income of the estate were paid either from other income and corpus, or solely from corpus. \* \* \*

As we have ruled above with respect to the capital loss of the estate on the sale of stock, we think that the California inheritance taxes and the additional Federal estate taxes paid by the administrator of the estate are deductions which the statute allows the son's estate as an entity and which can not be taken into account in determining the taxable income of the beneficiary or legatee.

*Judgment will be entered under Rule 50.*