### ARDENGHI v. HELVERING, Commissioner of Internal Revenue.

### No. 96.

Circuit Court of Appeals, Second Circuit.

Dec. 5, 1938.

Bronson, Rice & Lyman, of New Haven, Conn. (Charles M. Lyman, of New Haven, Conn., of counsel), for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Arnold Raum, Sp. Assts. to Atty. Gen., for respondent.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The chief question in this case is whether the taxpayer's gross income for the year 1930 should be reduced by the amount of federal "estate taxes", and state "succession taxes", paid by the executor of her husband's estate. The will had made her the residuary legatee, and directed the executor to pay all inheritance or succession taxes "out of my estate"; it also provided that the executor "might advance to my wife out of income any sums which she may desire". The income of the estate in 1930—the year of the testator's death—was about $67,000, and the executors paid the widow $57,000. They also paid for both federal "estate taxes" and state "succession taxes" about $245,000. The taxpayer wished to extinguish her gross income by subtracting these payments from what she received; the Commissioner refused, and the Board sustained him.

Inheritance and succession taxes obviously could not be allowed to the taxpayer as deductions, because § 23(c) of the Act of 1928, 26 U.S.C.A. § 23, expressly provided that they should "be allowed as a deduction only to the estate". However, that is not the argument, but that the payments are to be marshalled against the income of the estate; and that as they were much

greater than it, the sums distributed to the legatee could not have been income of any sort. If the will had directed the executor to use income first in paying estate and succession taxes, we assume that this would have been true: § 162(c), 26 U.S.C.A. § 162(c), allowed the executor to deduct only "the income of the estate * * * which is properly paid * * * to any legatee", and taxed the legatee upon it; payments of principal were neither deductible, nor taxable to the legatee. The local law must decide whether a payment is part of "the income of the estate * * * properly paid * * * to any legatee", and in most cases the result will turn upon the language of the will. In the case at bar there can be no doubt: "out of my estate" meant out of the corpus; and a power to pay "income" was not a power to pay anything else. The taxpayer suggests under the law of the domicile it was not necessary to grant the power because the executor might have paid out income without express authority. The cases cited in support of this scarcely go so far (Merwyn Trustee's Appeal, 75 Conn. 33, 52 A. 484; Carroll v. Arnold, 107 Conn. 535, 141 A. 657) but it would not be important if they did: the express power to pay income by implication denied the power to pay anything else. Indeed, the executor would probably have been assumed to have observed the testator's directions, so long as it was possible to do so, even if the direction had not bound him. The statute, § 23(c), did not compel him to deduct taxes from income; that was a privilege, not a duty, and lay within the pleasure of the testator. Therefore, any payments made to the widow were to be taken as income, until the income of the estate was used up.

Sitterding v. Commissioner, 4 Cir., 80 F.2d 939, is not against this conclusion; the court turned to the law of the domicile to learn whether the inheritance taxes paid should be marshalled against income or principal. For instance on page 941 Judge Northcott said: "it is not possible, therefore, to say that the distribution to the taxpayer was income, and not merely an advance on account of the corpus. It is still undetermined what amount of corpus the residuary legatee will receive". The respondent had merely failed to prove that the payments to the legatee were income; it was not enough that the executor had called them such; his books did not make them income, any more than the books of the legatee at bar made the payments principal. On the other hand in Baltzell v. Mitchell, 1 Cir., 3 F.2d 428, and Abell v. Tait, 4 Cir., 30 F.2d 54, the beneficiary was not allowed to deduct principal losses, "realized" by the executor during the period of settlement, on the theory that they should be marshalled against income. Although it was not given as the reason, we believe that the justification for these decisions was that under the local law such losses were capital losses as between the legatee and the estate, and properly allocated against principal. Certainly it is no answer to say that if losses were allowed, gains must be surcharged to the legatee's income. Capital gains would not be "properly paid" to the legatee during "administration or settlement of the estate". The suggestion that the payments might be regarded as "negative income" is a strange fantasy that we need not stop to consider.

A second and subsidiary point on the appeal is this. In October, 1930, the taxpayer conveyed property to trustees in trust for herself for life, remainders over. She deducted from her personal income two items; one for $1,440.94 paid in transfer taxes, and the other for $15, the rent of a safe deposit box. The Commissioner disallowed these in her favor, but allowed them against the income of the trust. She now wishes these entries reversed. It is enough to say in answer that the only evidence is from the books of the trustees, in which both items appear as "expenditures" of the trust. If in fact they were paid by the taxpayer, it does not appear; the trustee and the beneficiary are separate taxpayers. Anderson v. Wilson, 289 U.S. 20, 27, 53 S.Ct. 417, 77 L.Ed. 1004.

Orders affirmed.