**SIMON et al. v. HOEY.**

United States District Court
S. D. New York.

April 20, 1949.

Alexander & Green, New York City, for plaintiffs (James D. Ewing, Lasater Terrell, and Christian H. Genghof, New York City, of counsel).

John F. X. McGohey, United States Attorney for Southern District of New York, New York City, for defendant (David McKibbin, Assistant United States Attorney, New York City, of counsel).

LEIBELL, District Judge.

This is an action under the Internal Revenue Laws of the United States, 26 U.S.C.A. § 1 et seq., to recover income taxes paid by the estate of Edward J. Cornish, deceasesd. The case was submitted to the Court upon a stipulation of facts and certain exhibits therein referred to.

It appears from the stipulation that Edward J. Cornish died a resident of Putnam County, State of New York on May 3, 1938 leaving a last will and testament dated August 11, 1937, naming the plaintiffs herein as executors. The will was admitted to probate June 13, 1938. It devised his entire residuary estate to his wife, Selina C. Cornish, who survived him by about two weeks and died on May 18, 1938. His will was silent as to the disposition of any income earned or realized by his estate during the period of administration. The executors of the estate of Edward J. Cornish adopted an accounting period in the administration of the estate based upon a fiscal year commencing on May 3, 1938 and ending on April 30, 1939. During the fiscal year the executors, by a sale of certain of the assets of the estate, realized a net short-term gain in the sum of $504,378.95.

The executors maintained a separate bank account which was designated "Cash Income Principal Account No. 2" in which they deposited the capital gains realized upon the sale of assets of the estate during the period from May 3, 1938 to April 30, 1939. On March 29, 1939, they paid to the estate of Selina C. Cornish, as residuary legatee of the will of Edward J. Cornish, the sum of $483,126.51 out of the aforementioned capital gain that had been deposited in said account. With this payment they sent a letter to the executors of the Selina C. Cornish estate in which they stated that seven months having elapsed since their appointment, § 218 of the New York Surrogate's Court Act,[1] they were making distributions of income, capital gains, and on account of principal, to the residuary legatee. The second paragraph of the letter refers to a payment of $43,728.67 "cash income" from Account No. 2. The next paragraph deals with the above-mentioned capital gain distribution as follows: "In the administration of Mr. Cornish's estate since our appointment, we as executors have realized capital gains in the amount of $531,307.21 resulting from sales of assets and have incurred capital losses of $26,928.26 from sale of assets. The resulting net capital gain, therefore, amounts to $504,378.95. These capital gains have been segregated as realized and kept in an estate bank account designated Account No. 2. The commissions to which we as executors will be entitled upon the aforementioned gross capital gains amount to the sum of $21,252.44 and we are reserving in the Account No. 2 that amount The net capital gains over and above said commissions and amounting to the sum of $483,126.51 we are hereby remitting to you as executors of the last will and testament of Selina C. Cornish, deceased, by our check drawn upon said estate Account No. 2."

1. "§ 218. Payment of legacies.
"No legacy shall be paid by an executor, or administrator with the will annexed, before the completion of the publication of notice to creditors if such notice be published, or if none be published before the expiration of seven months from the time from granting letters testamentary or of administration, unless directed by the will or by a decree on an accounting to be sooner paid. Bequests of specific articles of property, other than securities representing money, may be delivered at any time in the discretion of the executor."

The fourth paragraph of the letter states: "On account of distribution of the principal of Mr. Cornish's estate, we send you herewith our check as executors in the amount of $125,000.00 drawn upon the estate's account No. 1, constituting principal as distinguished from income and capital gains of the estate."

The executors of the Edward J. Cornish estate filed in the Surrogate's Court, Putnam County, New York, in October 1940 an account of their proceedings in the estate from May 3, 1938 to September 30, 1940. In the summary statement thereof the capital gain of $504,378.95 is included in a figure of $532,523.83 which is stated to be "Increase of Principal from sale or collection of assets, as shown in Schedule E", which is entitled, "A Full and True Statement of all Principal Assets of the Estate Sold or Collected Resulting in Increases of Principal or on which There were Neither Increases or Decreases".

The summary statement also lists under the heading of "Principal Account" a credit of $2,995,944.45 opposite the statement "Amount of Payments and Distributions to Estate of Selina C. Cornish, as shown in Schedule "G". Schedule G is entitled, "A Full and True Statement of All Payments and Distributions of Principal Made to the Executors of the Estate of Selina C. Cornish" and lists the $483,126.-51 in issue as a "Distribution of net capital gains in cash".

The account filed by the executors also contains separate heading and schedules with respect to "Income". The capital gain distribution is not included in any part of the account devoted to "Income".

The executors' account was judicially settled and allowed on November 4, 1940, upon a waiver of citation, receipt and release, and consent of all parties. The decree on the accounting included the same provisions, figures and headings set forth above which, appear in the executors' summary statement of account.

On April 24, 1939, prior to filing an income tax return for the estate of Edward J. Cornish for the fiscal year ending April 30, 1939, Charles Simon, one of the exe-

cutors, requested a ruling from the Commissioner of Internal Revenue as to whether any part of the capital gain of $504,378.-94 paid to the estate of Selina C. Cornish ($483,126.51) or to other persons entitled thereto, constituted income taxable to the estate of Selina C. Cornish. (Ex. P) By a letter dated June 9, 1939 (Ex. Q) the office of the Commissioner of Internal Revenue ruled that the capital gains realized by the estate of Edward J. Cornish from the sale of assets were taxable to that estate and no deduction for the distributions thus made was allowable under Section 162 of the Act, 26 U.S.C.A. § 162.

The executors of the estate of Edward J. Cornish thereupon filed a Federal fiduciary income tax return for the fiscal year May 3, 1938 to April 30, 1939. The return included, pursuant to the ruling of the Commissioner, the capital gain of $504,-378.95 without any deduction of the $483,-126.51 paid to the estate of Selina C. Cornish. A tax of $308,591.34 was paid under protest. The Commissioner assessed a deficiency of $8,475.11 plus interest of $345.96, which was also paid under protest. A claim for refund was filed February 7, 1941 for the tax, $316,583.95 and interest, $345.96, within three years of the time the return was filed and within two years of the time the total amount of the tax was paid. A refund of $1,651.29 tax and $67.41 interest was made June 9, 1944, pursuant to a certificate of overassessment. But the claim for refund was disallowed July 6, 1944, to the sum of $315,211.21, made up of a tax of $314,932.66 and interest in the amount of $278.55.

On December 19, 1945 the plaintiffs, as executors of the will of Edward J. Cornish filed a complaint in this court to recover the said sum of $315,211.21 and interest. They contend that the capital gain of $504,378.95 realized in the fiscal year ending April 30, 1939 was income to the estate of Edward J. Cornish, and that the payment of the sum of $483,126.51 to the executors of the residuary legatee, Selina C. Cornish, was deductible in computing the taxable income of the estate of Edward J. Cornish, and was taxable to the estate of the said

residuary legatee under Section 162(c) of the Revenue Act of 1938.

The defendant answers that the payment of the sum of $483,126.51 to the estate of the residuary legatee, Selina C. Cornish, out of the capital gains realized, constituted a payment of principal or corpus to the legatee rather than income, that it could not be "properly paid" as income under the law of New York, and that it therefore was not deductible under Section 162(c) of the United States Revenue Act of 1938 [26 U.S.C.A. 162(c)] in calculating the Federal income tax on the estate of Edward J. Cornish.

Section 162(c) provides: "(c) In the case of income received by estates of deceased persons during the period of administration or settlement of the estate, and in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary."

Section 162(c) of the Act permits the deduction, if the capital gains were "properly paid" to the residuary legatee. The New York Tax Law, McKinney's Consol. Laws, c. 60, in effect at the time, although it contains in Section 365(3) a provision very similar to Section 162(c) of the Federal Internal Revenue Act, nevertheless in Section 365(7) specifically provides that "the tax on income arising from net capital gain realized by an estate or trust shall be imposed upon the estate or trust whether or not distributable to beneficiaries, or paid or credited to any legatee, heir or beneficiary" and that the "Income of an estate or trust with respect to which the tax is imposed upon the estate or trust shall not be included in the gross income of a beneficiary when distributed."

If the issue here involved only the conflict between the State and Federal tax laws as to the incidence of the tax, the Federal law would of course be controlling. But there is a holding by the Appellate Division, Third Department Bank of Richmondville v. Graves, 259 App.Div. 4, 18 N.Y.S. 2d 133, 138, [affirmed (4 to 3) by the New York Court of Appeals, 284 N.Y. 671, 30 N.E.2d 720, without opinion] that "capital gain received by an estate becomes a payment of corpus, rather than of income, when distributed to a residuary legatee" and that "the amount distributed * * * could not have been properly paid as income; on the contrary, it was rather the payment of a legacy or bequest, exempt from tax by section 359, subdivision (2)".

In Lyeth v. Hoey, 1938, 305 U.S. 188, 59 S.Ct. 155, 158, 83 L.Ed. 119, 119 A.L.R. 410, when the United States Supreme Court considered the question of what was an "inheritance" within the terms of the Revenue Act, the court held, Chief Justice Hughes writing the opinion:

"In the instant case, the Court of Appeals applied the Massachusetts rule, holding that whether the property was received by way of inheritance depended 'upon the law of the jurisdiction under which this taxpayer received it'. We think that this ruling was erroneous. The question as to the construction of the exemption in the federal statute is not determined by local law. * * * the question whether what the heir has thus received had been 'acquired by inheritance' within the meaning of the federal statute necessarily is a federal question. It is not determined by local characterization.

"In dealing with the meaning and application of an act of Congress enacted in the exercise of its plenary power under the Constitution to tax income and to grant exemptions from that tax, it is the will of Congress which controls, and the expression of its will, in the absence of language evidencing a different purpose, should be interpreted 'so as to give a uniform application to a nation-wide scheme of taxation.' Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199. Congress establishes its own criteria and the state law may control only when the federal taxing act by express language or necessary implication makes its opera-

tion dependant upon state law. Burnet v. Harmel, supra. See Burk-Waggoner Oil Ass'n v. Hopkins, 269 U.S. 110, 111, 114, 46 S.Ct. 48, 49, 70 L.Ed. 183; Weiss v. Wiener, 279 U.S. 333, 337, 49 S.Ct. 337, 73 L.Ed. 720; Morrissey v. Commissioner, 296 U.S. 344, 356, 56 S.Ct. 289, 294, 80 L.Ed. 263. Compare Crooks v. Harrelson, 282 U.S. 55, 59, 51 S.Ct. 49, 50, 75 L.Ed. 156; Poe v. Seaborn, 282 U.S. 101, 109, 110, 51 S.Ct. 58, 75 L.Ed. 239; Blair v. Commissioner, 300 U.S. 5, 9, 10, 57 S.Ct. 330, 331, 81 L.Ed. 465. There is no such expression or necessary implication in this instance. Whether what an heir receives from the estate of his ancestor through the compromise of his contest of his ancestor's will should be regarded as within the exemption from the federal tax should not be decided in one way in the case of an heir in Pennsylvania or Minnesota and in another way in the case of an heir in Massachusetts or New York, according to the differing views of the state courts. We think that it was the intention of Congress in establishing this exemption to provide a uniform rule."

■ The general rule is that "What is income is controlled by Federal law". Commissioner of Internal Revenue v. Tower, 1946, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135; Lusthaus v. Commissioner of Internal Revenue, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679; Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Daine v. Commissioner of Internal Revenue, 2 Cir., 1948, 168 F.2d 449, at page 451, 4 A.L.R.2d 248.

In the case at bar the defendant argues that Section 162(c) of the United States Internal Revenue Act by using the words "properly paid" has "by necessary implication" made its operation "dependent upon state law".

Section 21 of the Internal Revenue Act of 1938 defines individual net income to be the gross income computed under Section 22 less the deductions allowed by Section 23. Capital gains are income under Section 22 (a). They are not deductible but may be offset against capital losses to the extent described in Section 117.

Section 162 of the 1938 Act states that the net income of an estate shall be computed in the same manner and on the same basis as that of individuals, with certain exceptions described in subdivisions (a), (b) and (c) of Section 162. Subdivisions (b) and (c) relate to additional deductions based on income distributed currently to beneficiaries (subd. b) or "which is properly paid or credited during such year to any legatee, heir, or beneficiary" (subd. c).

■■ "Income" as used in Sections 21 and 22 includes any gains from the sale of capital assets. Bowers v. Kerbaugh-Empire Co., 271 U.S. 170, 46 S.Ct. 449, 70 L.Ed. 886. Income as used in Section 162 must also include such gains and the money realized as a gain or profit by the executors of Edward J. Cornish on the sale of assets of the estate was necessarily income of the estate of Edward J. Cornish within the definition of the Federal statute.

■ In calculating the income tax of an estate the Federal statute, § 162(c), allows a deduction or exemption to the estate of income, paid as such to legatees or beneficiaries, Sanborn v. Commissioner of Internal Revenue, 8 Cir., 1937, 88 F.2d 134; Weigel v. Commissioner of Internal Revenue, 7 Cir., 1938, 96 F.2d 387, 117 A.L.R. 366, only if it was "properly paid or credited" to the legatee or beneficiary. In order to be allowable as a deduction in computing the net income of the estate of Edward J. Cornish, the capital gains thus paid out to Selina C. Cornish's estate must have been "properly" paid.

■ The state courts supervise and control the estates of decedents and the conduct of the executors and administrators of the estates. The state courts determine the rights of creditors, legatees and distributees and also the manner and method of payments of the estate to legatees and beneficiaries. Whether an executor may "properly" pay a sum out of an estate, is a matter to be determined by local law, since it concerns problems over which the state courts exercise jurisdiction in the administration of estates. This was the view expressed in Proctor v. White, D.C. Mass. 1939, 28 F.

Supp. 161, where the court in considering Section 162(c) of the Revenue Act of 1928, 26 U.S.C.A.Int.Rev.Acts, page 406, which was substantially the same as the provision in the 1938 Act, said, 28 F.Supp. at page 165:

"What constitutes federal taxable income is controlled by federal law and the federal Courts are not bound by the decisions of a local jurisdiction in determining the character of property for income tax purposes except the federal taxing act, by express language or necessary implication, makes its own operation dependent on state law. Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410; Blair v. Commissioner of Internal Revenue, 300 U.S. 5, 11, 57 S.Ct. 330, 81 L.Ed. 465; Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77 L.Ed. 199; Merchants' Loan & Trust Co. v. Smietanka, 255 U.S. 509, 516, 41 S.Ct. 386, 65 L.Ed. 751, 15 A.L.R. 1305.

"However, there was no such question presented in the present case as to the character of property to be taxed but merely the legality or validity of the payment of the income, which it is not disputed this was, to a beneficiary under the will of the deceased. The words 'properly paid' in the Revenue Acts cited naturally mean rightly paid, with legal justification.

"The testatrix was a resident of Massachusetts and the disposition of her property in that state was subject to its laws and the orders of its courts respecting distribution of the estate. * * *

"Consequently, the provisions of the will and the laws of the state having jurisdiction over the administration determine what income of the trust is properly to be paid to the beneficiaries. County Nat. Bank & Trust Co. Ex'r v. Commissioner of Internal Revenue, 39 B.T.A. 357, February 9, 1939. Anderson v. Wilson, 289 U.S. 20, 53 S.Ct. 417, 77 L.Ed. 1004."

The same view was expressed the year before by the Circuit Court of Appeals for the Second Circuit in Ardenghi v. Helvering, 1938, 100 F.2d 406, 407:

"The local law must decide whether a payment is part of 'the income of the estate * * * properly paid * * * to

any legatee', and in most cases the result will turn upon the language of the will.

\*   \*   \*   \*   \*   \*

"Capital gains would not be 'properly paid' to the legatee during 'administration or settlement of the estate'. The suggestion that the payments might be regarded as 'negative income' is a strange fantasy that we need not stop to consider."

In Ardenghi v. Helvering, 2 Cir., 1938, supra, the Court also considered the argument made by the taxpayer-legatee [based on Sitterding v. Commissioner of Internal Revenue, 4 Cir., 1936, 80 F.2d 939,] that payments of estate taxes by the executor should be marshalled against the income of the estate, but the Circuit Court of Appeals, Second Circuit, held that in the case before that Court the Ardenghi will directed payment of taxes "out of my estate" which the Court said "meant out of the corpus". The will also provided that the executor "might advance to my wife out of income any sums which she may desire". The court construed that provision as specifically limiting the discretion of the executors to the payment of income.

Paragraph I of the will of Edward J. Cornish provides: "I direct that all funeral expenses, costs of administration, and taxes or assessments made by the government of the United States or by the State of New York, and all owing by me, shall be first paid out of my estate." This provision of the will apparently made unnecessary any proration or apportionment of the estate taxes among all the legatees under Section 124 of the New York Decedent's Estate Law, McKinney's Consol. Laws, c. 13, and placed the burden of paying all inheritance taxes upon the residuary estate. In the account filed by the executors and approved by the Surrogate, Paragraph VIIA states: "No allocations or proration of federal or New York estate taxes is necessary because Clause 'I' of the Will provides that they be paid out of the residuary estate."

Other Federal courts and the Revenue Agencies of the Federal government have considered the question of whether capital gains realized by an estate in the process of administration and distributed to a le-

gatee during that period may be deducted from the income of the estate under Section 162(c) of the Revenue Act.

In support of the contention that such payments may be deducted are Weigel v. Commissioner, 7 Cir., 1938, 96 F.2d 387, 117 A.L.R. 366; Riker v. Commissioner, 2 Cir., 1930, 42 F.2d 150; Little v. White, 1 Cir., 1931, 47 F.2d 512; Commissioner v. Crawford's Estate, 3 Cir., 1943, 139 F.2d 616, [distribution of income to a trust as legatee]; and Weber v. Commissioner, 2 Cir., 1940, 111 F.2d 766. The Riker case and the Little case do not specifically state that any of the income paid was realized through a capital gain; but in the Riker case the court cited, in support of its decision, Taft v. Bowers, 278 U.S. 470, 49 S.Ct. 199, 73 L.Ed. 460, 64 A.L.R. 362, which held that an increase in the value of a gift from the time the property was acquired by the donor to the time it was sold by the donee could be reached as income taxable to the donee, and in the Little case the court relied upon the Internal Revenue Act's definition of income, Sec. 213 of the Act of 1924, 26 U.S.C.A. Int. Rev. Acts, page 19, which included capital gains from the sale of property.

That such payments may not be deducted, has been held by the courts in Ardenghi v. Helvering, 2 Cir., 1938, 100 F.2d 406; In re Roger's Estate, 2 Cir., 1944, 143 F. 2d 695; and Burchenal v. Commissioner, 6 Cir., 1945, 150 F.2d 482. The Ardenghi case has already been discussed. In the Rogers case the will provided that "all realized appreciation in the value of stock * * *, resulting from the sale * * * thereof, shall be considered principal and not income". [143 F.2d 696.] Judge Frank observed further that "under the New York decisions, such a gain is regarded as an addition to the corpus of the estate". In the Burchenal case the distribution was made to a trustee of certain trusts created out of the residuary estate and the Court stated that it was settled law in the forum (Ohio) that a capital gain became part of the corpus of the trust, even though it was defined as income in the Revenue Act.

The Board of Tax Appeals in Chambers v. Commissioner, 1936, 33 B.T.A. 1125 held that a capital gain distributed to the beneficiary of a trust was not deductible by the estate under Section 162(c) because under the law of the forum (Pennsylvania) a capital gain must be added to the corpus of the trust after it is realized and cannot be distributed as income.

The weight of authority is to the effect that a capital gain realized by an estate in the course of its administration, may, in the absence of any specific provision in the will and in the absence of any prohibition in the law of the state in which the estate is being administered, be properly paid as income to residuary legatees of the estate and deducted from the income of the estate under Section 162(c).

A resort to the local (New York) law under the rule of Ardenghi v. Helvering, supra (and Proctor v. White, supra) to determine whether the income of the Edward J. Cornish estate was "properly paid" to the residuary legatee, the estate of Selina C. Cornish, requires a consideration of the case of Bank of Richmondville v. Graves, 1938, 259 App.Div. 4, 18 N.Y.S.2d 133, affirmed without opinion and by a 4-3 vote in 284 N.Y. 671, 30 N.E.2d 720. That case is strongly relied upon by the government.

The Bank of Richmondville case specifically held that a capital gain paid to a sole distributee as a distribution of income could not be properly paid as income under New York law. The case involved Section 365 of the New York Tax Law similar to Section 162 of the Federal Revenue Act here in issue. The estate (the Lewis estate) had realized a capital gain from the sale of assets of the estate and had distributed the capital gain to the distributee of the decedent in the same year in which it was realized. New York State assessed a tax on the capital gain as taxable income of the estate, and the executor claimed a right to deduct said payment as "income properly paid or credited to any legatee, heir or other beneficiary". Sec. 365, N. Y. Tax Law, 1937. The court (Appellate Division, Fourth Dept.) stated:

"Concededly the Lewis estate received in 1937 income in the form of capital gain amounting to $234,258.75 resulting from the sale of a major asset of the estate.

The question is whether the executors, who in 1937 distributed to Laura Lewis Norris $714,265.40, being the proceeds of sale less expenses and deductions, may deduct from estate income that portion of the $714,265.40 which they computed as the excess above cost. In our opinion capital gain received by an estate becomes a payment of corpus, rather than of income, when distributed to a residuary legatee. A gain or surplus realized upon the sale of trust assets is an accretion of the capital fund and becomes part of the corpus; it is not currently distributable income. Matter of Gerry's Estate, 103 N.Y. 445, 9 N.E. 235; Matter of Schley's Will, 202 App.Div. 169, 195 N.Y.S. 871; Matter of Eger's Estate, 139 Misc. 59, 247 N.Y.S. 527; Judson v. United States, 15 F.Supp. 62, [83 Ct.Cl. 584]. By analogy it is clear that a capital gain realized by an estate upon the profitable sale of an estate capital asset must also become an addition to the corpus of the estate and, while it represents capital income to the estate, it is corpus and not income when it is distributed to a legatee as part of the distribution of the total corpus.

\*     \*     \*     \*     \*     \*

"The fact that receipts constitute income in the hands of an estate does not necessarily stamp them as income in the hands of a distributee. Thus, annual payments from an estate to a life annuitant, though paid from estate income, are nevertheless bequests exempt from tax in the hands of a distributee and taxable to the estate.

\*     \*     \*     \*     \*     \*

"The precise question involved here upon facts substantially identical has been passed upon adversely to petitioners in the Federal Courts. Weigel v. Commissioner of Internal Revenue, 7 Cir., 96 F.2d 387, 117 A.L.R. 366; Chambers v. Commissioner, supra [33 B.T.A. 1125]; Old Colony Trust Company v. Commissioner, supra [38 B.T.A. 828]; Matter of Schaub v. Commissioner, 40 B.T.A. 486." [259 App.Div. 4, 18 N.Y.S.2d 138.]

The Bank of Richmondville case was cited by Judge Frank in his opinion in Re Rogers' Estate, 2 Cir., 1944, 143 F.2d 695, in which he stated: "We also agree with the Tax Court that the capital gain resulting from the sale of decedent's property by the executors was not income of the estate 'paid or credited' to beneficiaries within the meaning of § 162(c), 26 U.S.C.A. Int. Rev. Code, § 162(c). Decedent's will expressly forbade such a result since it provided that 'all realized appreciation in the value of stock \* \* \*, resulting from the sale \* \* \* thereof, shall be considered principal and not income \* \*.' Likewise, under the New York decisions, such a gain is regarded as an addition to the corpus of the estate; Bank of Richmondville v. Graves, 259 App.Div. 4, 18 N.Y.S.2d 133, affirmed 284 N.Y. 671, 30 N.E.2d 720. In the accounts filed by the executors with the Surrogates they showed these gains as part of the 'principal.' "

One of the cases relied upon by the Appellate Division in the Richmondville Bank case was Matter of Schaub v. Commissioner, 40 B.T.A. 486, cited as a Tax Board case. A capital gain from the sale of realty, although distributed to the residuary legatees in accordance with the will, was assessed a tax as income of the estate not deductible as income paid to beneficiaries under Section 162(c) of the Act of 1938. Upon review, Weber v. Commissioner of Internal Revenue, 1940, 111 F.2d 766, 768, the Circuit Court of Appeals, Second Circuit, reversed the decision of the Tax Board and held:

"The petitioner's second point is that even if the gain on sale of the farm was income of the estate in 1933, the gain was paid over in the same year to the three children and was deductible by the estate in computing net income by reason of section 162(c) of the Revenue Act of 1932, 26 U.S.C.A. Int. Rev. Code, § 162(c). This point is also sound. \* \* \*

"The gain realized in 1933 was paid over in the same year by the executors to the children. Beyond doubt the payment was 'properly' made, for the children, whether or not they had title to the proceeds, had the right to an immediate distribution. We

cannot grasp the commissioner's argument that the profit on the sale 'was never payable to them as such but was paid to them in discharge of their legacies.' The profit was payable to them as profit, because it was part of the proceeds of sale of the farm. See Commissioner v. Stearns, 2 Cir., 65 F.2d 371. On the assumption that it was the estate which realized the profit, the case is squarely within section 162(c)."

The Rogers case, 143 F.2d 695, however, limited the opinion of the same court in the Weber case, as follows, 143 F.2d at page 696: "In Weber v. Commissioner, 2 Cir., 111 F.2d 766, the terms of the will were such that the gains upon the making of the sale became at once a profit of the legatees; obviously it therefore immediately became income so far as they were concerned; that case is therefore not in point, and any language in that opinion possibly indicating a conclusion different from that we have reached here should be regarded as dictum."

In the Richmondville Bank case, the distributee who received the capital gain would not have been liable for a tax on such income because she was a non-resident of New York and if the payment had been allowed as a deduction from estate income under Section 365(3) the income would have escaped taxation in the State of New York. This was contrary to the purpose of the statute which was designed to shift the tax liability, but not to create a complete exemption.

At the time the Richmondville Bank case was decided (March 1940) the provisions of Section 365 of the New York Tax Law had been amended so that an executor in calculating the estate's taxable income could not deduct from the estate's income capital gains which he had paid out to a legatee.[2] Subd. (7) of Section 365 as amended provides: "7. Notwithstanding the provisions of subdivisions one, two, three and four of this section, the tax on income arising from net capital gain realized by an estate or trust shall be imposed upon the estate or trust whether or not distributable to beneficiaries, or paid or credited to any legatee, heir or beneficiary. Income of an estate or trust with respect to which the tax is imposed upon the estate or trust shall not be included in the gross income of a beneficiary when distributed."

The opinion in the Richmondville Bank case based its conclusions in part on Section 17-b of the New York Personal Property Law, McKinney's Consol.Laws, c. 41, and held that, under Section 17-b[3] "the amount distributed by the estate * * * could not have been properly paid as income".

The language of Section 17-b and its legislative history[4] indicate that it has no

2. Laws 1938, c. 511, § 10 in effect April 6, 1938; and Laws 1939, c. 14, effective February 22, 1939, and made retroactive so as to "apply to returns for any taxable year commencing on or after October first, nineteen hundred thirty-seven."

3. Section 17-b of the New York Personal Property Law provides (as it did in 1938): "Unless otherwise expressly provided by the will of a person dying after this act takes effect, all income from real and personal property earned during the period of administration of the estate of such testator and not payable to others or otherwise disposed of by the will shall be distributed pro rata as income among the beneficiaries of any trust created out of the residuary estate of such testator and the other persons entitled to such residuary estate. None of such income shall, after such distribution, be added to the capital of the residuary estate the whole or any part of which is devised or bequeathed in trust or for life or for a term of years, but shall be paid ratably to the life beneficiary of a trust, or to the life tenant, or to the absolute residuary legatee, as the case may be. Unless otherwise directed in the will, income shall be payable to the life beneficiaries of trusts, or to life tenants from the date of testator's death. Nothing contained in this act shall affect the right of any person to income on any portion of the estate not part of the residuary estate of such testator."

4. Combined Report of Decedent Estate Commission—1938 Supplement p. 184 states: "This new law simplifies considerably a difficulty which confronted law-

application to a case where the residuary estate is in its entirety bequeathed outright. It would appear that Section 17-b is applicable to the distribution of income of residuary estate, only if the whole or some part of the residuary estate is placed in trust. In the Edward J. Cornish estate the residuary estate is an absolute one, out of which no trusts or life estates have been carved.

The Lewis estate, in the Richmondville Bank case, did not involve either "earned income" or a residuary estate bequeathed at least in part in trust, and so Section 17-b of the New York Personal Property Law was not directly applicable.

■ But, Bank of Richmondville **v.** Graves, supra, represents the law of the State of New York. It declared unequivocably that capital gain received by an estate becomes a payment of corpus rather than of income when distributed to a residuary legatee, and that it is not currently distributable as income. Mindful of the direction of the Ardenghi case, supra, to resort to local law for a determination of whether the income is "properly paid" I have concluded that while the capital gains could be properly paid to the residuary legatee as principal, and the Surrogate's decree on the settlement of the executors' accounts approved their payment as a payment of principal, the capital gains could not, under the Richmondville Bank case, be "properly paid" to the residuary legatee as income. For the foregoing reasons I have also concluded that Section 162(c) of the Revenue Act of 1938 providing for a deduction of income, "properly paid", does not authorize a deduction from the taxable income of the Edward J. Cornish estate of the capital gains paid by the executors of that estate to the residuary legatee, the estate of Selina C. Cornish, because under the New York law the capital gains could not be "properly paid" to the residuary legatee as income.

The difference between the capital gain realized by the estate of Edward J. Cornish, $504,378.95, and the amount distributed by them to the estate of Selina C. Cornish, $483,126.51, was the sum of $21,252.44 which represented the executors' commissions on the capital gain. Plaintiffs claim for a refund was based upon the tax paid upon the whole sum of $504,378.95.

■ As executors, they had already deducted these commissions in computing the value of the net estate for federal estate tax purposes under Section 812(b) of the Internal Revenue Act of 1938. To allow this as a deduction on the income tax return of the estate would result in a double deduction and permit the amount to escape taxation, contrary to the provisions of Section 162(e) of the Act of 1938. Apparently plaintiffs now waive their claim as to the tax on the $21,252.44. In their answering brief they state: "The plaintiffs do not now claim, as they did in the claim for refund, that these commissions are deductible to the Estate for income tax purposes as an administration expense, business or non-business, incident to the earning of the taxable income represented by the gains. Four days before the original claim for refund in this case was filed the Supreme Court handed down its decision in Higgins v. Commissioner, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783, and later in April its decisions in City Bank Farmers Trust Co. v. Helvering, 313 U.S. 121, 61 S.Ct. 896, 85 L.Ed. 1227, and United States v. Pyne, 313 U.S. 127, 61 S.Ct. 893, 85 L.Ed. 1231. Under these cases it would appear that the amounts of the gains paid out for commissions are not deductible under former Section 23(a) of the Revenue Act of 1938 relating to deduction of business expenses."

The complaint is accordingly dismissed on the merits. Findings of fact and conclusions of law are being filed herewith.

yers in an estate accounting. It provides for the distribution pro rata, as income, among the beneficiaries of any trust created out of the residuary estate and other persons entitled to a part of the residuary estate outright, of the income earned during the period of administration. The new law changed the rule laid down in Matter of Benson, 96 N.Y. 499, 48 Am. Rep. 646, and Matter of Lord's Estate, 134 Misc. 198, 236 N.Y.S. 136."